CASE 0:11-cv-00935-DWF-FLN   Document 45   Filed 07/08/11   Page 1 of 16

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| M. A. Mortenson Company, a Minnesota corporation, | Civil No. 11-935 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Saunders Concrete Company, Inc., a New York Corporation, and Hartford Fire Insurance Company, a Connecticut corporation, | |
| Defendants. | |

_____

Evan A. Fetters, Esq., and James J. Hartnett, IV, Esq., Faegre & Benson LLP, counsel for Plaintiff.

Scott G. Harris, Esq., and Elizabeth C. Kramer, Esq., Leonard Street and Deinard, PA, counsel for Defendant Saunders Concrete Company, Inc.

Thomas J. Radio, Esq., Hinshaw & Culbertson LLP, and Andrew S. Kent, Esq., Wolff & Samson PC, counsel for Defendant Hartford Fire Insurance Company.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Compel Arbitration and Stay Litigation brought by Plaintiff M. A. Mortenson Company ("Mortenson"). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Mortenson is a Minnesota corporation that was the prime contractor hired to construct the Hardscrabble Wind Project, consisting of 37 Wind Turbine Generators, located in Herkimer County, New York (the "Project"). (Compl. ¶ 5 & Ex. D ¶ 7.) Defendant Saunders Concrete Company, Inc. ("Saunders") is a ready mix concrete supply business in Nedrow, New York. (Decl. of Tracy Saunders ¶ 1.) Mortensen entered into a Subcontract Agreement with Saunders, effective on or about May 24, 2010, pursuant to which Saunders agreed to supply concrete for use in construction of the Project (the "Subcontract"). (Compl. ¶ 7.) Defendant Hartford Fire Insurance Company ("Hartford"), as surety to Saunders, provided a performance bond guaranteeing Saunders' faithful performance of its work pursuant to the Subcontract (the "Bond"). (*Id.* ¶ 8.)

Mortenson alleges that Saunders breached the Subcontract by defectively performing its work and exposed Mortenson to damages in excess of $6.4 million. (*Id.* ¶¶ 10-15.) On or about November 12, 2010, Mortenson declared that Saunders was in default under the Subcontract. (*Id.* ¶ 13.) Mortenson then called upon Hartford to perform under its Bond, but Hartford has not reimbursed Mortenson for any of the costs allegedly incurred as a result of Saunders' default. (*Id.* ¶¶ 16-17.)

The Subcontract contains the following dispute resolution provisions:

21. DISPUTES.

21.1  If arbitration of disputes is provided for in the Contract Documents, and if Mortenson, in its sole discretion, elects to demand arbitration with Subcontractor individually, or as part of joint proceedings with Owner or

others, any dispute arising between Mortenson and Subcontractor under the Agreement, including breach thereof, shall be decided by arbitration in the manner provided for in the Contract Documents.  If Mortenson elects to demand arbitration with Subcontractor individually, and subject to applicable law, arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate.

21.2  If the Contract Documents do not provide for arbitration and if Mortenson, in its sole discretion, elects to demand arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under the Agreement, including breach thereof, shall be decided by arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association.  Subject to applicable law, arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate.  The award rendered by the arbitrator pursuant to Paragraphs 21.1 or 21.2 shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

21.3  If the Contract Documents provide administrative procedures for resolution of disputes, Subcontractor agrees to comply with such procedures and submit any claims or disputes to Mortenson in such manner and time as will permit Mortenson to comply with such administrative procedures. Subcontractor agrees not to institute (and to stay) legal or other proceedings against Mortenson until such administrative procedures and remedies have been exhausted, and agrees to fully reimburse Mortenson for costs and expenses, including reasonable attorney's fees, incurred by Mortenson in the enforcement of this Paragraph.

21.4  Any claim by Subcontractor involving, in whole or in part, acts, errors or omissions of Owner or Architect, or other agents or representatives of Owner, as determined by Mortenson in its sole discretion, shall be subject to and governed by this Paragraph.  Such claim shall be submitted in writing to Mortenson in such time and manner as will permit Mortenson to comply with the Contract Documents.  Such claim shall contain a written entitlement narrative and an itemization of pricing for review and approval by Mortenson.  If Mortenson, in its sole discretion, determines not to approve such written claim, Subcontractor shall revise and resubmit such claim.  If Mortenson, in its sole discretion, decides not to proceed with such claim, Subcontractor, to the extent it determines to pursue such claim, shall

> be obligated to pursue such claim directly against Owner, and Subcontractor agrees not to institute (and to stay) legal or other remedies against Mortenson until all legal proceedings against Owner with respect to such claim are final and complete. If Mortenson, in its sole discretion, decides to proceed with such claim, Subcontractor agrees not to institute (and to stay) legal or other remedies against Mortenson until all legal proceedings against Owner with respect to such claim are final and complete. Subcontractor's right of recovery, arising from acts, errors or omissions of Owner or Architect, or other agents or representatives of Owner, shall be limited solely to that dollar amount and other relief, which is recovered from Owner and Mortenson shall not be liable to Subcontractor for any monies or other relief except those paid to Mortenson by Owner for the benefit of Subcontractor. Subcontractor hereby agrees to make no claim to further payment beyond the Subcontract Price arising out of the acts, errors, or omissions of Owner or Architect, or other agents or representatives of
> owner, other than to the extent that Mortenson may receive funds from Owner on behalf of Subcontractor, which funds shall be paid by Mortenson to Subcontractor less costs and expenses incurred by Mortenson in prosecuting such claims.

(Compl. ¶ 7, Ex. A at 9-10.)

Mortenson filed a demand for arbitration, pursuant to paragraph 21.2 of the Subcontract, on March 31, 2011 (the "Demand"). (Compl. ¶ 19.) The Demand named Saunders and Hartford as Respondents. (Compl. ¶ 20, Ex. C.) Saunders did not participate in the arbitration and instead commenced an action in New York state court on April 7, 2011 alleging various claims against Mortenson relating to the Subcontract and the Project. (Compl. ¶ 22.) On April 8, 2011, Saunders filed a motion to stay arbitration in New York state court. (*Id.* ¶ 23.)

Mortenson initiated the action in this Court on April 14, 2011 and filed the currently pending Motion to Compel Arbitration and Stay Litigation on Friday,

April 15, 2011. That same day, Saunders filed an Order to Show Cause in the New York state action requesting that the arbitration proceedings be temporarily stayed and enjoined. The New York state court signed the Order to Show Cause and filed it on Monday, April 18, 2011. After the Order to Show Cause was filed, but still on April 18, Mortenson filed a Notice for Removal, removing the action to the Northern District of New York.

This Court held a hearing on the pending Motion to Compel Arbitration and Stay Litigation on May 19, 2011. At that time, the parties disputed the legal effect of the Order to Show Cause issued by the New York state court before removal. On that same day, in the Northern District of New York, Saunders filed an emergency motion seeking a stay of arbitration pending a decision on a motion for a permanent injunction. *Saunders Concrete Co. v. M.A. Mortenson Co.*, No. 5:11-cv-428 (N.D.N.Y.), Doc. No. 8. After the hearing before this Court concluded, but still on May 19, the court in the Northern District of New York issued an order granting Saunders' motion for a temporary restraining order and setting a hearing on Saunders' motion for a permanent injunction for May 26, 2011. *Id.*, Doc. No. 10. On May 20, 2011, this Court stayed Mortenson's Motion to Compel Arbitration and Stay Litigation. (Doc. No. 36.)

On May 26, 2011, the court in the Northern District of New York denied Saunders' motion to stay the arbitration proceedings and then stayed the proceedings in

that action.[1] *Saunders Concrete Co. v. M.A. Mortenson Co.*, No. 5:11-cv-428 (N.D.N.Y.), Doc. No. 18. This Court then requested additional briefing from the parties, which has been received. The Court now addresses the substance of Mortenson's pending motion.

## DISCUSSION

### I. Personal Jurisdiction

As an initial matter, Saunders argues that it is not subject to personal jurisdiction in the District of Minnesota. Saunders contends that it has not consented to the jurisdiction of Minnesota courts and lacks the minimum contacts necessary for the assertion of personal jurisdiction over it in Minnesota.

The Subcontract provides, however, that arbitration proceedings shall be held in Minneapolis, Minnesota. (Compl. ¶ 18, Ex. A ¶ 21.2.) "Implying consent to personal jurisdiction from the forum selection clause in an agreement to arbitrate is necessary to implement the statutory requirement that an arbitration hearing must be held 'within the district in which the petition for an order directing such arbitration is filed.'" *St. Paul Fire & Marine Ins. Co. v. Courtney Enters.*, 270 F.3d 621, 624 (8th Cir. 2001) (quoting 9 U.S.C. § 4). Because the Court respectfully rejects Saunders' assertion that the arbitration agreement in the Subcontract is unenforceable, as discussed below, the Court

---

[1] Due to the Northern District of New York court's decision to stay that action, that part of Mortenson's current motion that seeks a stay of the litigation in New York is denied as moot.

concludes that Saunders is subject to personal jurisdiction in Minnesota.

## II. Motion to Compel Arbitration

When considering a motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Medcam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005). A motion to compel arbitration should be granted if the arbitration clause is "susceptible of an interpretation that covers the asserted dispute." *Id*. (citations omitted).

Here, Mortenson asserts that the Subcontract with Saunders contains a valid arbitration clause. Mortenson asserts that the scope of the arbitration clause covers the claims raised in Mortenson's Demand and the claims alleged by Saunders in New York state court. Mortenson also asserts that Hartford is bound by the Subcontract's arbitration clause because the Subcontract is incorporated into the Bond.

### A. Saunders

Saunders asserts that there is no valid agreement to arbitrate. Saunders contends that the arbitration agreement is void under New York[2] statutory law; that the arbitration

(Footnote Continued on Next Page)

agreement is invalid as unconscionable; and that the arbitration agreement was an integral part of, and substantially related to, a fraudulent scheme by Mortenson. Saunders also asserts that even if a valid agreement to arbitrate exists, certain claims at issue between the parties fall outside the scope of that agreement. The Court addresses each argument in turn.

### 1. N.Y. Lien Law § 34

Saunders contends that the Subcontract's arbitration agreement violates Section 34 of the New York Lien Law, which provides in part that: "Notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created under article two is waived, shall be void as against public policy and wholly unenforceable." N.Y. Lien Law § 34. Saunders asserts that Section 34 invalidates contracts that contain a pay-if-paid provision that forces a subcontractor to assume the risk that an owner will pay the general contractor. Saunders contends that Paragraph 21.4 of the Subcontract is such a pay-if-paid clause, that Article 21 of the Subcontract, entitled "Disputes," is the parties' arbitration agreement, and that the presence within Article 21 of Paragraph 21.4 renders the arbitration agreement void.

Mortenson asserts that Paragraph 21.4 is not a pay-if-paid clause but instead is a pass-through clause, which permits a subcontractor to assert claims for extra work for which it blames the owner directly against the owner. Mortenson contends that the

---

(Footnote Continued From Previous Page)
2      The parties agree that the Subcontract is governed by New York law.

language "arising from acts, errors or omissions of Owner or Architect" within Paragraph 21.4 makes it clear that that provision only limits recovery on claims for compensation over and above the Subcontract price. Mortenson asserts in addition that Paragraph 21.4 is not part of the parties' arbitration agreement, which Mortenson contends is Paragraph 21.2. Mortenson also contends that Paragraph 21.4 is severable from the remainder of the Subcontract, leaving Paragraph 21.2 enforceable.

The Court respectfully disagrees with Mortenson's assertion that the language of Paragraph 21.4 makes it clear that that provision only limits recovery on claims for compensation over and above the Subcontract price. The Court need not decide, however, whether Paragraph 21.4 runs afoul of Section 34 of the New York Lien Law because Paragraph 21.2 is a separate provision containing a specific agreement to arbitrate. "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010).

Saunders contends that the New York statutory provision should be construed to invalidate all of Article 21, but the Supreme Court has made clear that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* at 2786 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). Thus, only a challenge to the validity of Paragraph 21.2 is relevant to the Court's determination whether the parties' arbitration agreement is

enforceable. *Rent-A-Center*, 130 S. Ct. at 2778. Because N.Y. Lien Law § 34 is not implicated by Paragraph 21.2, that statute is inapplicable here.

### 2. Unconscionability

Saunders asserts that under New York law, arbitration agreements that are both procedurally and substantively unconscionable are not enforceable. Saunders asserts that the arbitration agreement here is procedurally unconscionable because Saunders had no ability to negotiate it. Saunders argues that the arbitration agreement is substantively unconscionable because it contains three material infirmities: it contains pay-if-paid language; it gives Mortenson the sole discretion to choose whether to arbitrate its claims against Saunders or litigate them in a court of law; and it imposes an undue burden on Saunders by requiring arbitration in Minnesota of disputes respecting a project constructed in upstate New York by New York laborers and materialmen.

Mortenson asserts that each of the unconscionability arguments presented by Saunders has been rejected by courts when addressing commercial arbitration clauses. Mortenson argues that the inability to negotiate the terms of an arbitration agreement does not render that agreement procedurally unconscionable under New York law, relying on *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571-72 (S.D.N.Y. 2009). Mortenson asserts that Mortenson's sole discretion under the arbitration agreement to choose whether or not to arbitrate also does not render the agreement unenforceable, citing *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 451-52 (2d Cir. 1995). As to Saunders' argument that requiring it to arbitrate disputes in Minnesota constitutes an undue burden,

Mortenson relies on *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), in which the Supreme Court upheld a forum selection clause that required cruise passengers living in Washington to litigate disputes with the cruise line in Florida.

As discussed above, the Court has already concluded that the alleged pay-if-paid language in Paragraph 21.4 does not invalidate the arbitration agreement in Paragraph 21.2. The Court agrees with Mortenson that Saunders' additional unconscionability arguments have been largely rejected by the courts and are not a basis for invalidating the parties' arbitration agreement here.

### 3. Fraud in the Inducement

Saunders asserts that the arbitration agreement in the Subcontract was part and parcel of an overall fraudulent scheme by Mortenson. Saunders contends that when fraud in the inducement is alleged, the issue of arbitrability is decided in the first instance by the court whenever a substantial relationship or nexus is shown between the arbitration provision and the alleged fraud or misrepresentation. Saunders contends that here Mortenson sought to obtain labor and materials based upon a series of false representations, to deny payment for the labor and materials, and then to use the arbitration agreement to browbeat Saunders into accepting settlement.

Mortenson asserts that federal courts may adjudicate issues of fraud only when there is some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular. Mortenson contends that Saunders' fraud claim here attacks the Subcontract as a whole and therefore is arbitrable. In particular, Mortenson

11

notes that the complaint filed by Saunders in New York state court contains no allegation that Saunders was fraudulently induced to enter into the arbitration clause of the Subcontract. Mortenson relies on *Garten v. Kurth*, 265 F.3d 136 (2d Cir. 2001), in which the Second Circuit held that a claim of fraud in the inducement requires more than the allegation that the arbitration clause is an element of the fraud scheme and instead must include particularized facts specific to the arbitration provision. *See id.* at 143.

The Court finds that Saunders' allegations are insufficient to show the existence of any misrepresentation or fraud related to the arbitration clause itself. Accordingly, the Court concludes that Saunders' fraud in the inducement defense is arbitrable and does not invalidate the parties' arbitration agreement.

### 4.     Scope

Saunders asserts that the scope of the arbitration agreement does not cover all of the claims at issue between the parties. Saunders' argument here is primarily directed at its claims asserted in the New York litigation. That litigation has since been stayed, and those claims are not before this Court. The Court therefore need not address the question of whether the claims asserted by Saunders in New York are within the scope of the arbitration agreement. Saunders also contends, however, that to the extent Mortenson's Demand alleges negligence and property damage against Saunders, those claims fall outside the arbitration agreement.

Mortenson asserts that the arbitration agreement governs any dispute arising under the Subcontract and so covers the claims raised in the Demand. The Demand does not

identify specific claims, but instead alleges that Saunders supplied defective concrete, negligently performed demolition work related to the defective concrete, refused to participate in further repair efforts, and was declared to be in breach of the Subcontract. The Demand then seeks an award of Mortenson's costs due to the alleged property damage and defective work of Saunders, as well as other costs as provided by the Subcontract.

The Court concludes that Mortenson's claim against Saunders as set forth in the Demand arises under the Subcontract and is therefore subject to arbitration. Accordingly, having concluded that a valid agreement to arbitrate exists and that the Demand is within the scope of that agreement, the Court grants Mortenson's motion to compel arbitration as to Saunders.

### B. Hartford

Hartford asserts that no arbitration agreement applies to Mortenson's bond claim against Hartford. Hartford asserts that it is not a party to the Subcontract and that the Bond does not contain an agreement to arbitrate. Hartford argues in addition that the arbitration agreement only applies to disputes between Mortenson and Saunders that arise under the Subcontract and thus does not reach disputes between Mortenson and Hartford under the Bond. Hartford contends that the incorporation of a contract by reference in a surety bond does not obligate the surety to arbitrate claims and defenses under the bond, relying on *Fidelity and Deposit Co. of Maryland v. Parsons & Whittemore Contractors Corp.*, 48 N.Y.2d 127 (1979).

Mortenson asserts that because the Bond incorporates the Subcontract by reference, the Subcontract's arbitration provision obligates Hartford to arbitrate disputes with Mortenson. Mortenson asserts that under New York law, a surety may be compelled to arbitrate any dispute with the bond obligee when its performance bond incorporates by reference a subcontract containing a broad arbitration clause, relying on *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, Civ. No. 05-217, 2008 WL 190310 (S.D.N.Y. Jan. 16, 2008).

The Court concludes that Hartford cannot be compelled to arbitrate disputes between Hartford and Mortenson arising under the Bond. In *Liberty Mut. Ins.*, the surety had entered into a takeover agreement and completed the project pursuant to the terms and conditions of the underlying contract. 2008 WL 190310, at *1-2. The surety was then suing as a subrogee and was therefore limited to the relief available to the subrogor. *Id.* at *11. That case is thus distinguishable. Here, Mortenson's claims against Hartford, as set forth in the Demand, are based on the allegation that Hartford has failed to perform under the Bond. The arbitration agreement between Mortenson and Saunders, while incorporated in the Bond between Mortenson and Hartford, by its own terms only governs "any dispute arising between Mortenson and [Saunders] under the [Subcontract]." (Compl. ¶ 18, Ex. A ¶ 21.2.) The dispute between Mortenson and Hartford arising under the Bond is thus beyond the scope of the arbitration agreement.

   C.   **Retention of Jurisdiction**

Mortenson requests that the Court retain jurisdiction pending the outcome of the

arbitration. The Court notes, however, that Mortenson, in its Complaint, did not assert any claims but instead set forth a series of allegations and then requested that the Court order arbitration between the parties. The Court has now ruled on Mortenson's request for arbitration. Since there are no remaining claims pled against Saunders or Hartford, the Court will not retain jurisdiction over this matter.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Mortenson's Motion to Compel Arbitration and Stay Litigation (Doc. No. [2]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Mortenson's motion to compel arbitration as to the claims raised in its Demand against Saunders is **GRANTED**;

    b. Mortenson's motion to compel arbitration as to the claims raised in its Demand against Hartford is **DENIED**;

    c. Mortenson's motion to stay the action commenced by Saunders in New York is **DENIED** as moot;

    d. Mortenson's request that the Court retain jurisdiction over this matter pending the outcome of arbitration is **DENIED**; and

    e. Mortenson's Complaint and Petition to Compel Arbitration and to Stay Litigation (Doc. No. [1]) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  July 8, 2011                              s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge